The next case today, number 241687, United States v. Jason Levasseur. Will counsel for the appellant please come up and introduce yourself on the record to begin. Good morning, may I please the court. My name is Scott Hess and I represent the appellant, Jason Levasseur. I would like to reserve three minutes of my time, please, may. This case is not just about Jason Levasseur. This case is a case about civil rights and the case is about recognizing that the right to bear arms is not a second class right and holding the government to its burden when it seeks to prosecute an individual for exercising their Second Amendment right. The Second Amendment presumptively protects the right of a person to keep and bear arms and to overcome this presumption and prosecute a person, the government must prove that the firearms regulation at issue, the prohibition is rooted in the history and tradition of the country. This regulation and the protection of our civil rights in the context of 922G1 only comes through the consideration of as applied challenges through the application of the test outlined by the Supreme Court in Bruin. This court in the United States v. Booker and Torres Rosario all but affirmed that as applied challenges in the circuit were permissible, relying of course on Heller and McDonald to make that proclamation. We're asking the court here in this case a couple of different things. First to reject the government's argument that it can take a categorical approach to 922G1 and prohibit all felons from having firearms no matter the underlying felony. We're asking the court to determine here that 922G1 though is constitutional when it's applied to persons with dangerous felony convictions. Can I ask you just a threshold question about what constitutes a ground for an as applied challenge in this context? So let me just give you two possibilities. One way of thinking about it is Congress has only made one determination and that determination is that your status as a felon is a ground for disarmament. It was absolutely indifferent and has made no judgments about what kind of felony that is. So you could challenge that facially and say in no circumstance is that permissible. Which we're not doing. Which you're not doing. You could alternatively say, well, that judgment is the only judgment Congress made and perhaps in my case that judgment's no good because the felony occurred so long ago that the ground for making felonies a ground for disarmament isn't a valid ground. Even if in general that is a ground for disarmament. You're making a different kind of as applied challenge which seems to depend on the nature of the felony, correct? That's correct. And I'm just wondering why that's a relevant consideration in a case in which there's no indication Congress has any interest in distinguishing between the types of felonies. It just thinks the quality of being a felon is a ground for disarmament. So why wouldn't the as applied challenges that are relevant to that be things that suggest the quality of being a felony is not itself enough rather than the implication is that I think if this was a violent felony it'd be fine. Correct. And I guess I'm just having trouble understanding where that criterion is coming from when Congress's judgment seems to be all felonies are the same. Yes, Your Honor. So obviously the Constitution trumps Congress's legislative actions. This is a constitutional challenge to 922G1. So Congress's determination that all felonies fall under this umbrella is not dispositive at all to the argument. And so in order for any regulation, I'm sorry, to be But I guess what I'm really asking is it's almost, it's not to say that if your felony is the type of felony that can't be regulated, I guess I'm really wondering how different that is than a facial challenge. Because isn't that just a way of saying the characteristic of being a felon is not in and of itself a ground for punishment? And that's the only characteristic Congress has identified. So certainly the facial challenge would be, as Your Honor had indicated, under no circumstances. And I'm just wondering how different the as-applied challenge really is in this context. It's very different. Because the analysis Can I ask it a slightly different way? Does it matter what the grounds are of the relevant historical tradition? So for example, and I assume you're going to talk about this, if the relevant historical tradition is dangerousness, which you think your client doesn't fall under it. And so the Second Amendment restriction in place can only be consistent with the historical tradition if it's focusing on dangerousness, then does it matter that Congress determined on a class-wide basis that the status of being a felon is enough? In other words, do you understand my question? So we have to figure out first what the relevant historical tradition is, and then we have to look at what Congress did.  And if the legislation passed by Congress conflicts with the history and tradition of firearms regulations, then that regulation as applied to Mr. Levasseur would be unconstitutional. I guess what I'm saying, so if we were to conclude that generally 922G1 is consistent with a historical tradition of disarming people who are dangerous, and you yourself don't seem to contest that necessarily in this case. So if we were to conclude that, then does an as-applied challenge become relevant? Because you're saying that the only historical tradition that justifies this law is one based on dangerousness, and my client is not dangerous. Or as Judge Barron is pointing out, if in fact the relevant historical tradition is not dangerousness, it's just that people who've been convicted of a crime punishable for more than one year can be disarmed, but then it doesn't help your client. Do you understand my question? I think so. And those certainly, I mean, ultimately that's where the case lands. If the court determines that dangerousness is not the metric to use in examining the history and tradition of disarmament, then we would not prevail. But if it is, if it is, and then Congress did something totally unrelated to that and just decided to say felonies, and felonies are dangerous and not dangerous, and they just pick this large, broad category unmoored from what is potentially the tradition, does that then just invalidate the law because what Congress did is unconnected to this interest? Or do we say, well, Congress did something too broad, but we can use a scalpel now and go in and go felony by felony and determine if they had thought about dangerousness instead of just felonies, they could have done this one. That's exactly right, Your Honor. The court would have to determine which felonies would be, would result in disarmament. I suppose one answer to this is you don't much care what the answer to these questions are because either way you win. Well, preferably, Your Honor, we would. But I, and again, maybe I'm not tracking the nuance in what the question is. I mean, did you not make the broader argument just because you didn't think of, the broader argument would be 922G1 is just unconstitutional because Congress went way beyond, it applies to every felony, strict liability felonies, white collar felonies, things that, you know, you wouldn't think of dangerousness, but we don't care, but you didn't make that argument. Correct. The fact of being a felon, you could say, is just either is something that makes you dangerous or is not something that makes you dangerous. Correct. It is not. But your argument seems to us a little bit different, which is sometimes it is and sometimes it isn't, depending, or are you really just saying the fact of being a felon alone is not a basis for saying you're dangerous? The fact of being a felon alone is not a basis for saying you're dangerous.  So that is, that's, and so from that perspective, one thing that's a little bit curious about the record here is you have put forward evidence as to why this felony is not, or drug possession is not something that's dangerous. Correct. But with respect to the historic tradition that's relevant, we know that there are class-wide prohibitions. Class-wide prohibitions against Catholics, class-wide prohibitions against Loyalists. Not every single Catholic and not every single Loyalist, you know, if they brought their as-applied challenge, I'm the Catholic who can have a gun, but the way that the historical tradition is that they were indifferent to that and you could have the broad class-wide ban. So some over breadth was part of our tradition. And I guess the relevant question here then is, as to this threshold point, what are we supposed to look at in making the assessment of whether a felon as a inherent characteristic is, notwithstanding that it's going to be somewhat over broad, consonant with the tradition of class-wide bans? So the, of course, that seems to be unavoidable even in your as-applied challenge is what I guess I'm pressing you on. So I think starting from the most current laws and going backwards, right, the first laws prohibiting felons from having firearms wasn't until the 1930s. It was 150 years almost after the time frame that the Supreme Court says we have to examine when we're determining what the history and tradition of the country is. So there is no precedent to say, okay, because you were convicted of a crime. The government has argued, I think there's three different historical categories of laws that are relevant to this analysis. The first is what Your Honor was referring to, which were kind of these categorical laws that were really used in the context of oppressing people, right? They prohibited, you know, persons of color, Native Americans, et cetera, from having guns, Catholics, et cetera. And then you have a category of laws where there was capital punishment and a state forfeiture. That's another category of laws which the government relied on and other courts have looked at. And then you have laws that were most directly tied to dangerous, such as the going arm laws and the surety laws. So in order to connect the modern felony, we have to look at those three different categories of laws. And this is a difficult task and the Supreme Court recognized it because we're essentially trying to create analogies between modern regulations and historical laws, some of which are 200 or 300 years old. But in order to do that, the Supreme Court gave us some guidance, which is really key to the court analyzing this issue, in my view, because just as Thomas warned, right, when we're doing analogical reasoning, you know, you have to look at what you're actually comparing. And I think he said, you know, if you have a green hat and a green truck and your metric is things that are green, that's great. If you're talking about things you can wear, there is no relationship. And so to put a finer point on that, the Supreme Court indicated one of the ways to compare these laws is to basically apply the why and the how test, right? And one of those metrics was if there was a societal problem at the time of the founding of the country, but it was managed or regulated in a different way than the modern regulation, that's evidence it's not constitutional. Likewise, if there was a societal problem, but it was managed differently, sort of the how, then that's also evidence that the modern regulation would be unconstitutional. And that analysis, which the courts required to undergo is really pivotal to the case because those categorical laws that were in place didn't apply to criminals. Crime existed. Felonies existed back when these groups were being disarmed. But disarming an individual wasn't a punishment that was available. So that's where, in regard to that category. But that doesn't get to dangerousness. You can't do this for crime, right? Sure. Sorry. Correct. So the going armed laws and the sherry laws, and those were the laws that the court found were in alias in Rahimi, would be the laws that the court would look at to determine dangerousness. Okay. What type of conduct historically would have formed the basis to deprive somebody of their Second Amendment rights? Counsel, before you sit down, I know you have more time, but I do want to just ask you one other question that's been puzzling me. Since you're not bringing a facial challenge, and so for the purposes of deciding this case, we essentially presume that 922 G1 is facially constitutional. Whose burden then is it to show that disarming your client would be, assuming that we can do as apply challenges and all the other difficult questions, whose burden would it be to show that disarming your client would not be consistent with our historical tradition? I think you've suggested it's still the government's burden to show that it is, but given that we're assuming the law is generally constitutional and you're bringing a particular challenge, why wouldn't it be your burden to actually prove that it's inconsistent with history and tradition to disarm your client? And then, relatedly, what facts are we supposed to look at? Just the conviction, just the conviction for the drug possession, the specific facts of the conduct, previous convictions, can you just comment briefly and then we'll follow up more? I can, Your Honor. So the Supreme Court made it very clear that the burden is on the government to establish that it's constitutional to deprive somebody of the right to bear arms. And I think it's also very apparent from the cases that exist that you're going to have different circumstances. Were those all facial challenges, then? That's right. What's that, Your Honor? Were those all facial challenges? So Rahimi was a facial challenge. So how do we know what the answer is for burdens when you're conceding facial constitutionality and making an as-applied challenge? And I'm asking you this question because I think the other circuit courts have come out differently on this issue. So and, of course, applying this to 922G1 is something that's developing within the different circuits. But the Supreme Court had contemplated that there are going to be individual scenarios that the courts are going to have to examine. So whether it's a facial challenge or an as-applied challenge, I don't think changes the government's burden to show that disarming and stripping a person of their civil rights is constitutional when they raise that as being an issue. I think to answer your second question, and it's a practical one, is how does the court go about kind of determining what is dangerous and what's not? I think the more straightforward way to do it is similar to what Judge Walker did, is to determine, OK, there's these crimes, and are they indicative of dangerous or not? I think there's guidance, right? The courts have the Armed Career Criminal Act, which sets forth very specific categories of crimes that would trigger that enhancement. I think— So is that every felony for which this person was identified in the indictment as the predicate of felony? Could you repeat that, Your Honor? You said crimes. Right. But this defendant has more than one crime conviction. Correct. So which is the conviction that we should be focused on? Only the predicate felony named in the indictment? Well, I think the court could look at all of the felonies. I don't think the court is restricted to just saying— Why? Because the record in the case, his criminal convictions, which were the basis of the indictment, identified all those felonies. The indictment did identify all those felonies? The indictment identified those felonies. So every felony that's identified in the indictment, we could look at? Yes. Okay. But not—because they were all identified as the predicate offense that he was being charged that was the grounding for the 922 offense?  Correct. But Judge Walker just relied on that. Correct. Judge Walker only relied on the possession of scheduled drugs. But just to be—just so we understand how you think we should do this, suppose there were other offenses that he engaged in that were not named in the indictment, I would take it you'd say those cannot be considered? I would. I think non-adjudicated convictions would be something that should be considered by  Well, even if they were adjudicated convictions, but they just weren't mentioned in the indictment, are those considerable or not? I think that if the government wants to bring a challenge or strip somebody of their constitutional right and prosecute them for possessing a gun, they should be naming the convictions in the indictment. Okay. So then if we stick to the conviction indictment, the last—Judge Rookman also asked you about when we think about those convictions, should we be focused on the facts of the conduct involved in those convictions, or should we be doing a categorical approach when we think about whether that conviction is for an offense that satisfies the dangerousness test? Sure. And I think a categorical approach looking at the face of the indictment and the elements of the offense is the most practical approach for the courts to do, and that's for a couple of different reasons. Some of them are practical. So for instance, if I'm an attorney and somebody comes in the office and says I have this felony, I know that some felons can have guns, how do I determine if I'm one of those, or how does a judge determine that? If we can say, okay, we're looking at the elements in your prior conviction, these elements are present, you're prohibited, or these elements are not present— So you would say like ACCA, it has to be like a crime of use of force? Yeah, exactly. I mean, that's going to exclude a lot of stuff, like, you know, a serious drug trafficker under that theory is not prohibited. Is that— Well, I think the court could indicate if the prior conviction involved an enhancement for the use of a firearm in connection with that drug traffic activity, I think that that could count. I mean, the courts could craft different ways to make this analysis sort of practical and consistent with the history and tradition in a constitutional sense. But certainly, you know, burglaries, felony crimes of violence against people, perhaps crimes of recklessness that involve dangerous weapons could fall into that category. So before we get down this road where we start making up our own law of violence, just so I understand that threshold point, which was a very helpful analysis, I thought, of how to think about the historical tradition and matching it, there was an implicit assumption that the historical tradition of the class-wide bans for groups like loyalists was not predicated on a dangerousness finding. It was not predicated— Why is that the case? I mean, one might have thought the reason they didn't want loyalists to have the guns was because it would be dangerous for them to have them, not just, here's something we could do that's mean to loyalists. And if that's the case, how are we supposed to figure out the level of generality for this dangerousness determination, going from that class in that time to this class in this time? So I think using the example of the loyalists is a hat to a truck, because the test that the Supreme Court set forward said, look at why those laws were enacted. Right. But why? Because they were a real danger. But criminals were not—criminals. At that time, they weren't. They weren't discarded. But that's what I guess we're—how do we know when they don't have to be a dead ringer or a historical twin? Or is the idea that because too long passed before a class-wide ban of a very well-known class was instituted, that just precludes that kind of class-wide ban? Is that the idea? What I think I understand your question to be is that—is the fact that the law prohibiting felons as a class, that it was enacted 150 years after the founding, does that take it out of the relevant time frame that we should be examining? I think the answer to that question is yes. That is too long—that is too far out of the time frame. But in regard to the loyalists, in that set of laws, the difference is that there were crimes—crime was a societal problem back when loyalists were prohibited from having guns. However, society, the founders, did not say, OK, we're going to disarm you because of a conviction of a crime. That's where the distinction is, and that's where the nuance and the test of the Supreme Court set forth— Or in a slightly higher level, they just said, this class of people presents a risk. And based on our understanding of the way the world works at that time, that's a risk. And in the 1930s, we said, this group is a risk. And both are overbroad. Judge Barron said not every loyalist was a risk. But we think this is a—so if you just move it up one level to who's a risk, should the law not permit societies as they go forward to assess risks differently? I mean, you have to agree, guns changed, how guns used are changed, the nature of violence changed. All those things changed. And your position would just be, well, they didn't do it exactly that way. Even though they cared about risk, that's it. But this isn't like Ocean State, where there's some completely new problem that the court needs to address. We're talking about a societal problem that was affected. Isn't the counterargument that a lot of the cases and scholars have been talking about, which is that people who were committing serious crimes at least weren't being disarmed because there were much more serious penalties in place for those people, including the death of property. And so, again, when we're—since we're not looking for a twin, and we're just looking for a relevant historical analog, why aren't these other laws, class-based laws, relevant historical analogs, given that there were other laws in place that were far more serious in how the founders treated people who'd committed serious crimes? Sure. So, and I think what Your Honor is referring to is the lesser is included in the greater concept. Well, we're not—again, we—I mean, the Supreme Court has said we don't need a twin, and so the real question is how high—how high up is the principle that we're applying? It would be hard to deduce from the history that they did not think people who committed felons were a risk. I would disagree with Your Honor on that point. Well, they had the death penalty for them. They did. So they definitely had an interest in deterring them because they thought they were a risk. So I think that's the force of Judge Ruppemann's question to you. So disarmament was a separate and distinct penalty that could be imposed in the law, again, in the case of loyalists. Not every felon was executed. This idea that capital punishment, you know, every felon who was charged and convicted was executed, and that's why they didn't have disarmament, is historically inaccurate. And so, obviously, the option of disarmament was something that was known, it was applied to loyalists. It was not applied to criminals. If you were not executed— But to me, I think the loyalist was right. They were going to unite and have some kind of revolution, right? They were going to fight back in a unified way. That was the concern. That was the nature of weapons. That was—and now the problem is totally different. The problem is handguns on the street being used to kill people. And so that's—so they had a concern aligned with guns that was these people might rise up as a collective. That's not the concern. Now it's individual people using guns. So the problem has changed, but the idea of risk doesn't change. And I know, you know, this idea of law and amber, like, doesn't this have to account for the way the world evolves? So you're—in a lot of ways, Your Honor, I don't know that it has changed, right? There were people committing crimes with guns at the founding of the country. There were felonies. There were individuals committing crimes. They weren't disarmed as a consequence. I thought that you were agreeing that dangerousness is the relevant historical analog. So I'm just wondering—I didn't even understand you to be contesting that there was a relevant historical tradition for disarming dangerous people. You just don't think your client falls into that category. Well, I was addressing in that comment the general proposition that, you know, all felons kind of fell under the dangerous category. You're saying that can't be the right way to look at it. You could not justify a felon ban on the general proposition of dangerousness, if I understand what you're saying, because that's not the relevant historical tradition for assessing that ground. Is that the idea? No. So the surety laws would go— And I understood you to say the opposite, so yes, please clear it up. I'm sorry. What was your question again, Your Honor? Well, I thought you were suggesting to us that in assessing whether the felon ban could be justified, when the focus is just on the fact of a felony, you were saying that we could not uphold it by analogy to other class-wide bans, even if those class-wide bans were justified on the grounds of dangerousness, because of the time that has passed in which felons were present during that time and were not banned on a class-wide basis, notwithstanding the grounds for thinking they were dangerous then. That's what I understood the force of your point to be, because you weren't contesting that the loyalist ban might be based on a dangerousness principle. It's not based on individuals committing crimes. It wasn't a punishment for a crime. So to be clear, under the historical tradition, yes, the court can take the subcategory of persons who have been convicted of violent criminals, and there is a historical analog to disarming that group of people. Those are the going armed laws. Those are the surety laws. I think Rahimi amply identified that, that category of individuals. But that is separate, right? The main persons convicted of dangerous violent felonies is not the same as individuals who are convicted of non-violent felonies, of your frauds, your white-collar frauds. Right, so this is like you got an immutable characteristic assigned to you, which is felon, basically, right? You got that assigned to you, and then the tradition, and I mean, some of it we now view as abhorrent, but that's not really the question. We did say certain people with immutable-type characteristics, because of those characteristics, can't have guns, and then supposedly, those characteristics connected to something we were concerned about. We reject a lot of those connections, most of them today, but that idea was there, and that seems like the same idea. The guidance from the Supreme Court has indicated that if there was the societal problem that existed at the founding, and it was not addressed through disarmament, then that strongly suggests that statutes which result in disarmament of those individuals is not constitutional. So, taking that idea, and that's why you say, therefore, the only way this statute could be constitutional is if it was a felony that is of the violent type that would trigger the dangerousness inquiry. The statute is applied to Mr. McLaster. And so then, the question comes, okay, as to this particular crime, many courts seem to suggest that drug dealing is enough to trigger the dangerousness inquiry, notwithstanding it's a, quote, non-violent crime. What's the argument for drug possession is not enough? Sure. And I suppose, is it relevant what the drug is? Do you care between cocaine, meth, and marijuana? I think unless the government provides some evidence as to why the court should be distinguishing between those, I don't think it's relevant. I don't think we just get to say, okay, marijuana versus some other substance should be treated differently. But it's interesting because there are two circuits, the Fifth Circuit and the Eighth Circuit, that have specifically found that 922, I think it's G3 or G5, which prohibits a person who's a user of drugs from possessing a firearm, that that's unconstitutional. And again, using the same look at the historical analysis, says, hey, at this time, you found out the country. But other courts would go the opposite way on user. I don't know, are there any courts that have addressed drug possession? The Fifth and the Eighth Circuit. Drug, not user. Not the unlawful user, but just having been.  What? You're saying courts have addressed just strictly drug possession. The conviction for drug possession. Not present possession at the time of the possession of the gun, but past conviction for pure drug possession. I'm not aware of any. I'm not aware of either. Anyway, so what do we do? Certainly not the circuit. Well, I think we can go back and look at and do the analysis of, okay, the felonies for possession of scheduled drugs. Is there a history and tradition of prohibiting people from having firearms by virtue of, say, you know, not even possessing a drug. Let's even go a little bit further and say somebody who's using substances. Right? Alcohol has been around for longer than firearms. And it was recognized that being actively intoxicated and having a firearm could be a problem. But there wasn't a history and tradition of disarming individuals who were sober who were in possession of firearms. And that's really where the Fifth and Eighth Circuit made this distinction and said, okay, 922 G3 is unconstitutional. Because just because you're a user, if you're not under the influence and you're not using that firearm irresponsibly, you can't be disarmed. And it's actually fairly interesting because it was either the Fifth Circuit or the Eighth Circuit had found the felony, you know, that having a predicate felony conviction was categorically appropriate. And so those are interesting opinions to compare and contrast. Anything further? Thank you. Thank you. Thank you, counsel. Attorney for Appley, please come up and introduce yourself on the record to begin. Good morning. May it please the Court. Brian Klein, Board for the United States. Your Honors, this Court should affirm the District Court and find that Section 922 G1 is constitutional. I think it's important to note at the outset that this Court is not writing on a blank slate. Quite the contrary. Nine of this Court's sister circuits have already addressed the constitutionality of 922 G1, and six of those nine courts have found it constitutional in all its applications, including recently the en banc Ninth Circuit in Duarte and the Second Circuit in Zirka v. Bondi. Even those circuits that have entertained as applied challenges, the Fifth and the Sixth Circuit, have rejected all of those. How many of those are post-Rahimi? I think most of these, Your Honor, are post-Rahimi. Certainly the Ninth and Second who have upheld 922 G1 as a categorical rule. And in the Second, wasn't the contention and objection based on the fact that there wasn't an exemption? I think that was one of the issues that was raised in that case, Your Honor, that there had to be an individualized determination. Is that what Your Honor is asking? Yeah. And they rejected that idea. The Second Circuit rejected that idea, yes. Yeah, but I think that's a slightly different question than whether it can be applied to a nonviolent felony, which I understand you're contesting whether this is a nonviolent felony, but for purposes of the argument, did the Second Circuit address whether it could be applied? If there was an as-applied challenge based not on an exemption, lack of an exemption, but an as-applied challenge based on even though it's facially constitutional, it can't be applied to a nonviolent felony. I don't think the Second Circuit addressed that issue. I read the Second Circuit as having addressed that. Foreclosed that question. Yes. That it was an as-applied challenge in that case. The defendant's convictions were nonviolent. They were white-collar convictions, and the court rejected the defendant's as-applied challenge in that case. And in so doing, also said we're not going to do a felony-by-felony examination, and there's no need for an individualized determination. And why shouldn't we do a felony-by-felony in the as-applied context, given if the operative principle is dangerousness, or is that not the operative principle for assessing a felon ban? I think dangerousness is part of it, but it's not necessarily the whole rationale that the court needs to look at. I think what this court needs to look at are two separate principles. The first is that legislatures historically categorically disarm those convicted of serious crimes. Two, and these principles go together, legislatures can make categorical judgments that certain categories of people are too dangerous to be armed. We think history supports both of those principles, and both principles taken together, perhaps individually, but certainly taken together, support the constitutionality. The first one was that there is a history of categorically disarming people who were convicted of serious crimes? Yes, Your Honor. Is that the capital punishment idea? Yes, yes. Felonies at the time of the founding were punished severely, as the court has noted, by capital punishment, loss of entire estate forfeiture, and this was for all felons. Some nonviolent felonies at the time of the founding were subject to these punishments, and several circuits, the Eighth Circuit in Jackson, the Fourth Circuit in Hunt, have found this to be evidence that legislatures But was there, so if I was convicted of a felony in the past, and all my property was taken, at the end of my sentence, could I not buy a gun? At the end of your sentence? Yeah, I served my sentence. I was subject to my forfeiture order. I've done my time. It's 1810. I'd like to buy a gun. Could I? I don't know the answer to that, Your Honor. I think you do know the answer. You don't know of any law saying I couldn't, isn't that right? Well, but I think the point of those laws, Your Honor, is that legislatures didn't, when they had severe penalties like the death penalty and estate forfeiture for felonies, other courts have said they didn't have occasion to consider disarmament. Why not? Because, well, disarmament was subsumed within those There was a person who got a five-year prison sentence and was subject to forfeiture and who got out of prison and wanted to buy a gun. Right. It's just the question is did it include permanent disarmament, and it doesn't seem clear that they did. I don't know if it's clear if it was permanent disarmament, but I think this isn't the only Was there any law in the history of the country prior to 1930 imposing permanent disarmament? I know that there were, the other evidence that courts have looked at, Your Honor, is debates surrounding the state ratification debates, in which the highly influential dissent of the minority, which was involved in the Pennsylvania ratification debates, there was an argument that the people should have the right to bear arms unless for crimes committed or for real danger of public injury. And so that's another part of our history that suggests that the founders believed that disarmament was a legitimate sanction for those who committed crimes or were believed to, you know, the legislature feared that they would commit crimes. Counsel, let me ask you. You mentioned these two categories, serious crimes and then dangerousness is what you said. How do you think those actually map on to the conviction that Judge Walker relied on here, which was just drug possession? So I know your first position is there shouldn't be as applied challenges, but let's assume for a moment we disagreed with you on that. How should we map on those traditions to this conviction? Well, there's no doubt that drug possession is a serious crime, and it's also a crime that- Why is there no doubt? Can you explain a bit more? I mean, the serious crimes that you were referring to historically seem to play differently. Well, so I think the court has to take both of these principles together, the first one being that legislatures punished felons severely at the time of the founding. The second is that legislatures had the authority to disarm categories of people who they believed presented a danger of misusing firearms. Congress's judgment in enacting 922G1 is consistent with both of those principles because it makes a sensible policy judgment about risk, about perceived danger, and we believe that that applies to all- But that's at the level that it applies to every single one. We're asking a more precise question. You lost that. Just assume. Now you're down to the felony by felony point. You've lost what you just said. So now the question is, drug possession, should that be one of the ones that's more serious? If you say there are some, let's, you know, some kind of white-collar crime, you didn't pay your taxes, that's not going to count. Just assume. Now we have one that's in some kind of netherworld, which is drug possession, and I would suggest some drug possessors are going to be more dangerous than others. Some may need money so badly that they're likely to rob a bank, and some are not, and some are likely to go to a drug deal to get drugs with a gun, and some are not. So what do we do about that? So I guess a couple points, Your Honor. If the court is going to go down the road of entertaining as-applied challenges and looking at each felony on its own, I think there's two ways that circuits have done that. One is just looking at the conviction alone, the bare conviction at issue, and I don't think we're limited to just Mr. Levasseur's possession of methamphetamine conviction. I think the court can look at all of the predicate convictions, which include three convictions for illegal possession of a firearm under Maine law. The second is that courts also, the Fifth and Sixth Circuit, have adopted a regime where they don't just look at the conviction itself, they look at the defendant's entire record, including offense conduct in the pre-sentence report, judicially noticeable information in the record. Okay, let's assume I reject all of that, because my concern is, to me, drug possession, I imagine a range of people convicted of that crime, some of which I think my concerns about their having a gun are probably de minimis. Some I'm very concerned about having a gun because of the kinds of conduct that often, but not always, go with drug possession. So how do you deal with a crime like that where you really, it kind of depends on who it is? Well, I don't. I think it's about the perceived risk of danger, and someone who's had a prior possession for possessing methamphetamine, I think certainly fits within the category of people that Congress can reasonably say. And why? Is there any historical tradition for permanently disarming people for drug-related crimes? No, because drug, and this is a point that some of the other circuits have made, that our drug laws are mostly a modern phenomenon. Illicit drug trafficking was not something that was really, laws didn't go on the books until the modern era. But this isn't, you know, we don't necessarily need to look at the laws. My understanding of the Supreme Court precedent is we need to look at whether there was a similar problem at the time of the founding and other relevant time periods, maybe the enactment of the 14th Amendment. But it's certainly true that there were drugs at the time of the founding. There are different types of drugs, perhaps, but that's not something new. That's not a new thing that has happened. So is there anything in the historical tradition that you're aware of for permanently disarming people for some kind of drug-related crime? No, but we don't, the government doesn't need to point to an exact replica of a law that treated drugs. I don't mean, I'm not asking for an exact replica. I'm just saying generally. I'm saying that what the court should rely on are, this is at a level of generality that's far above finding a drug possession law that disarmed people. What we can point to is a history of disarming large categories of people, the loyalists, Catholics, Native Americans. But that's one possibility, and then that, just the question is how good an analogy of the how and why is that to this context? To narrow it, some courts have said drug dealing, drug trafficking, can be included. And the idea, I think, is because of the empirical tie between that criminal conduct and dangerousness, because of what we know of particularly when mixed with guns. So the two together would be a problem. And we have cases saying similar things. Here we don't have drug dealing as the predicate conviction. None of the predicate convictions are that. So maybe could you give an account, if we were inclined to follow those precedents that have treated drug dealing as a sufficient predicate offense, and those cases have not done it on the ground that it's just like the loyalists. They've done it on the ground that under Rahimi, that type of offense conduct is akin to the kind of violent criminal offense, because of the empirical or common sense understanding of the relationship between drug trafficking, guns, and the dangers that come with those two. What is an account that the criminal record here is like the cases in which courts have found a predicate offense for drug trafficking is sufficient? Well, there's a lot to unpack there, Your Honor. I think, first of all, I don't agree that the courts that have said that drug dealing is the type of predicate offense that survives scrutiny have not relied on the class-based disarmament laws that I've outlined. Well, they haven't, as I read them in the Third Circuit's recent decision when it did its analysis, as I understand it. It's applying the dangerous framework of Rahimi and then saying there's something about this particular offense conduct, even though it doesn't involve a use of force, that is sufficiently tied to behavior that does involve the use of force, because of what we know about the mix of guns and drug trafficking, that we should treat it as within the realm of a predictive judgment about dangerousness. So if we use that logic, is there an account that you could give under that rubric that would explain why this predicate offense conduct is akin to that, even though we don't have any conviction for drug trafficking? Well, I would go back to what this Court said in Torres-Rosario, which I acknowledge was pre-Bruin and Rahimi, but the Court's statement that there may be felonies that the Supreme Court finds are so tame and technical that we would sustain an as-applied challenge, but drug dealing is certainly not one of them.  That's the question. Right. No, I understand that's the question. So what Judge Walker says, I think, is, okay, the seller is the dealer, and we're worried, I guess we agree, or most courts agree, the seller is likely to have a gun, or not likely, but might have a gun, and that's enough. And now we have the buyer, and the buyer needs to go to the seller, and they're going to exchange money for drugs. And he's not a dealer, he's a purchaser. And not every possessor is a purchaser, but many are. And so that sort of risk could run both ways. So what Judge Walker is saying is, that's enough. Do you agree with that, or do you not agree with that? Your Honor, I would say that this Court has an entire landscape of cases that have already been decided. And even the Fifth and Sixth Circuits that have entertained as applied challenges have rejected those on predicate convictions, far less serious, I would say, than Mr. Levasseur's predicate convictions. In Contreras, which is a 920- That's just a conclusion. What is the connection between drug possession and dangerous? I just proposed one, and you didn't accept it. So what is the connection? No, I do agree with that. I agree with Judge Walker's reasoning that drug possession, drug dealing are both closely linked to propensity for violence. I also think that the Court does not need to just look at Mr. Levasseur's drug possession conviction, which I do think is a satisfactory predicate. It can also look at his three prior illegal weapons, firearms convictions. Just say a word about that. What would the account be? Suppose the only predicate conviction was a prior felony for illegal firearm usage or something like that. Why would that support dangerousness? I'm not saying it wouldn't at all, but was there some account that you could give? Well, I think it supports a belief that there's a heightened danger of future misuse of firearms. If someone has a gun, possesses a loaded gun in a car next to them, if someone has a gun that has a machine gun conversion device to it, I think it's quite reasonable to suspect that that's someone who shouldn't be trusted to own guns in the future. Thank you.  Thank you, Counsel. Will Attorney for Appellant please come up and reintroduce yourself on the record? You have a two-minute rebuttal. Thank you. Scott Hess again here for Jason Levasseur. The first point I wanted to comment on is, in response to a number of questions, connecting drugs with dangerousness and looking at the history, the government responded really that the answer to that legally is that there's a level of generality, right? Like we can just say, okay, here were groups that weren't trusted, and we can just lump everybody in. And that's really the problem. And even where I think the core error was with Judge Walker's decision is there's more speculation. There's too much speculation that's involved with making these leaps. We're talking like this. But, you know, Judge Boudin noted, you know, there's at some point an administrability problem. We cannot get into everyone's personal history and make individualized determinations on who's dangerous or who's not. So at some level, this has to work in some kind of categorical way. Otherwise, I don't know how we're going to do it. So, you know, we have to make some kind of categorical judgment if we accept your framework about drug possessors. And some are going to fit that category, and some are not. And so how do we do that? Because I can picture a continuum of drug possessors, and some are going to be people that I don't think should have guns or are dangerous to have guns, and some are not. And they're all lumped together. And unless we're going to do that individual person-to-person analysis, what are we supposed to do with that? So I think it's reasonable to assume that if somebody- Before you answer that, I just want to make sure I'm clear on one thing. You're not challenging. You're not making a challenge based on the argument that we can't do that analysis and that all we should look at is whether the fact of a felony alone is a basis for disarmament. I think the court can do an analysis of each individual offense, if I understand the court's question, in determining what is dangerous. That's what you're advocating, right? You didn't make that's the argument. That is your lead argument, correct? Right, right. And that's the only argument you're making. That the court can consider as a- But we can do it categorically based on the offense. We don't have to look at the individual conduct. That was my understanding of your argument. Correct. That the court should look at the elements of the offense when it's determining whether or not there's dangerousness. I think- But Jimson, you are assuming that the statute can be applied to some category of- This statute could be applied constitutionally to some category of felons. Violent felonies. Notwithstanding that all that the statute says is felony. Correct. Certainly. I'm not going to get up here and- Like the terrorist, you are not arguing that the person convicted of terrorism can't be disarmed. He's not convicted of terrorism. If you went into a bank and you were shooting rounds into the ceiling, you can't have a gun, right? Like, I don't view as any dispute about that. But I just want to- Under this statute, that is not something the jury has to find. The jury need only find he's a felon. That's why it would be appropriate for a defendant to bring a motion to dismiss the indictment prior to the case going to the jury so that the court can determine whether or not the prior conviction meets those requirements and falls in the category of a person being a dangerous felon. Okay. So now back to this. So I think it's reasonable to assume that if somebody is going to be either a drug user- And you're right. There's a spectrum out there. If somebody is going to be dangerous, I think the court could also maybe not just look at- Do they have a conviction for drug possession? But what about other violent crimes, right? Are there other assault convictions? Are there other indications that indicate that they pose a special danger of misusing the firearms? I don't think just a possession conviction on itself would be sufficient. But I think that's- So how does that apply to your case? You have a drug possessor, and that's the one, I guess, that was used as the predicate for the offense.  And then you go into the PSR, and there's a series of gun-related crimes. None of those offenses were crimes of violence. I think that's my point. When Your Honor was looking at, okay, is somebody going to use a gun violently? So what are those about? I haven't read what those gun- What underlies those? I mean, when you say crime of violence, are you now just telling me use the definitions from the Armed Career Criminal Act or the career offender? I think for purposes of having an easily administrable standard, that, yes, the court could look at and determine what elements of these offenses are indicative of violence or dangerousness. Suppose that the firearm offense was obliterating the serial number, so it was untrackable. Are you saying that? I take it you're not saying that the Second Amendment prohibits that crime. I would say that. I mean, that is being challenged right now. Are you challenging that? I don't think that's the case that's before the court. Okay, so then why couldn't it be that if there was a prior offense for misuse of a firearm and you're not contending that that conviction violated the Second Amendment, that that alone would be a basis for upholding this, because it's certainly an indication of a high risk of misusing firearms. I think a couple of different points. A, there are cases, and I think some of them have been successful, that the law criminalizing possession of a firearm number of an obliterated serial number is, in fact, not consistent with the Second Amendment. You don't bring that challenge here. It's not before us. My client wasn't convicted of having a gun. But he was convicted of an offense of obliterating a serial number. He was not. What was it? He was not. What was the firearm offense, then? Possession of a firearm by a prohibited person. The PSR indicated that the underlying facts were that he had a firearm. What about the subsidiary main convictions for a gun? He has other state law gun crimes, correct? They're all for possession of a firearm by a prohibited person. Why was he a prohibited person under those offenses? My recollection is that it was for operating after habitual offender revocation offenses. I'm not 100 percent on that, but that's my recollection from going back in the record. And do we know what those habitual offender offenses were? We don't. I don't off the top of my head, Your Honor. Would it matter to you if they were violent crimes? Well, I think if there were violent felony convictions that he had in his record, then you could sort of combine them like what I was referring to with regard to Judge Afram's question and say, okay, you have a history of violence and then you have a history of – and the history of violence itself I think would be disqualifying. That would be consistent with the history and tradition. But I think if there are other convictions for violence, that might enhance the inference that possession of drugs makes you violent. I think in the absence, though, of some connection between drugs and dangerousness, that's not enough. What was the habitual offender conduct? So I don't know what the actual facts were. Is there anything in the record that addresses that? So under State law, if you've been convicted so many times of usually operating after suspension.  Yeah, it's a driving offense. Whether it was going to work or whether it was something more nefarious, I don't know. Thank you. Thank you. Thank you, counsel. That concludes arguments in this case.